SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954
(212) 455-2000

———

FACSIMILE (212) 455-2502

DIRECT DIAL NUMBER  
(212) 455-3073

E-MAIL ADDRESS  
afrankel@stblaw.com

BY E-FILING

March 30, 2015

        Re:    *FDIC as Receiver for Guaranty Bank v. RBS Securities Inc.*, No. 14-51055; *FDIC as Receiver for Guaranty Bank v. Deutsche Bank Securities Inc.*, No. 14-51066

Lyle W. Cayce  
Clerk of the Court  
United States Court of Appeals  
Fifth Circuit  
Office of the Clerk  
600 S. Maestri Place  
New Orelans, LA 70130-3408

Dear Mr. Cayce:

      I write on behalf of Appellees pursuant to Federal Rule 28(j) to inform the Court of the decision in *FDIC v. Bear Stearns Asset Backed Securities I LLC*, ---F. Supp. 3d---, 2015 WL 1311300 (S.D.N.Y. Mar. 24, 2015) ("*Bear Stearns*"). The *Bear Stearns* court is the second court within the Second Circuit to conclude that *FHFA v. UBS Americas, Inc.*, 712 F.3d 136 (2d Cir. 2013), is no longer good law in view of *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) ("*Waldburger*"), *see* 2015 WL 1311300, at \*7, and the fourth federal court following *Waldburger* to hold that the FDIC Extender Statute does not preempt statutes of repose. *Bear Stearns* thus firmly rebuts the FDIC's attempt to cast *FDIC v. Chase Mortgage Finance Corp.*, 42 F. Supp. 3d 574 (S.D.N.Y. 2014), as an outlier. *See* FDIC Reply Br. 15-16. Further, consistent with other recent decisions previously cited by Appellees, the *Bear Stearns* court also considered the Tenth Circuit's decision in *NCUA Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199 (10th Cir. 2014), and rejected its analysis as incompatible with *Waldburger*. *See* 2015 WL 1311300, at \*7.

                                                 Respectfully submitted,

                                                 */s/ Andrew T. Frankel*

                                                 Andrew T. Frankel

cc:    All counsel (*by e-mail*)

2015 WL 1311300
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

FEDERAL DEPOSIT INSURANCE CORP.,
as Receiver for Citizens National Bank and
Receiver for Strategic Capital Bank, Plaintiff,
v.
BEAR STEARNS ASSET BACKED
SECURITIES I LLC, et al., Defendants.

No. 12CV4000–LTS–MHD.
|
Signed March 24, 2015.

**Attorneys and Law Firms**

Grais & Ellsworth LLP by Mark B. Holton, Esq., David J. Grais, Esq., Kathryn E. Matthews, Esq., New York, NY, for Plaintiff Federal Deposit Insurance Corporation, as Receiver for Citizens National Bank and as Receiver for Strategic Capital Bank.

Simpson Thacher & Bartlett LLP by Andrew T. Frankel, Esq., Thomas C. Rice, Esq., Abigail W. Williams, Esq., New York, NY, for Defendants Deutsche Bank Securities Inc., RBS Securities Inc., and UBS Securities LLC.

Cravath, Swaine & Moore LLP, by Richard W. Clary, Esq., Julie A. North, Esq., Richard J. Stark, Esq., Michael T. Reynolds, Esq., Lauren A. Moskowitz, Esq., New York, NY, for Defendants Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., and Credit Suisse Management LLC.

Mayer Brown LLP, by Michael O. Ware, Esq., S. Christopher Provenzano, Esq., New York, NY, for Defendant HSBC Securities (USA), Inc.

### *OPINION AND ORDER*

LAURA TAYLOR SWAIN, District Judge.

**\*1** In this action Plaintiff, the Federal Deposit Insurance Corporation, as receiver for both Citizens National Bank ("CNB") and Strategic Capital Bank ("SCB," and together with CNB the "Banks"), sues Bear Stearns Asset Backed Securities I LLC ("BSABS"); the Bear Stearns Companies LLC; J.P. Morgan Securities LLC; Citicorp Mortgage Securities, Inc. ("CMSI"); CitiMortgage, Inc. ("CitiMortgage"); Citigroup Global Markets Inc. ("Citigroup"); Credit Suisse First Boston Mortgage Securities Corp.; Credit Suisse Management LLC ("Credit Suisse Mgmt."); Credit Suisse Securities (USA) LLC ("Credit Suisse Securities"); Merrill Lynch Mortgage Investors, Inc. ("Merrill Lynch"); Merrill Lynch Mortgage Capital Inc. ("MLMCI"); Merrill Lynch, Pierce, Fenner & Smith Inc.; Ally Securities, LLC; Deutsche Bank Securities Inc. ("DBS"); HSBC Securities (USA) Inc. ("HSBC"); RBS Securities Inc. ("RBS"); and UBS Securities LLC ("UBS") (collectively, "Defendants"),[1] alleging that Defendants violated the Securities Act of 1933 (the "1933 Act") in connection with the issuance of certain certificates backed by collateral pools of residential mortgage loans. Plaintiff amended the complaint on October 12, 2012 (the "Amended Complaint").

Defendants later brought the instant motion to dismiss the Amended Complaint (the "Motion"), arguing that the action is untimely and that the Amended Complaint fails to state a claim upon which relief can be granted. Among Defendants' arguments was the assertion that the FDIC's 1933 Act claims are barred by the statute of repose provision set forth in Section 13 of the 1933 Act, 15 U.S.C. § 77m. Plaintiff asserted that the statute of repose was preempted by an extension provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified as 12 U.S.C. § 1821(d)(14) (the "FDIC Extender Provision"). While the motion was pending, the Second Circuit held, in *Federal Housing Finance Agency v. UBS Americas, Inc.,* 712 F.3d 136 (2d Cir.2013), that the Section 13 statute of repose was preempted by the extension provision of the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4617(b)(12), which is substantially identical to the FDIC Extender Provision, and Defendants withdrew the Section 13 aspect of their motion. The Supreme Court thereafter held in *CTS Corp. v. Waldburger,* 134 S.Ct. 2175 (2014), that an extender provision of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") did not preempt statutes of repose, and remanded, in light of that decision, a Tenth Circuit decision [2] that had held that statutes of repose were preempted by another statutory provision that is substantially identical to the FDIC Extender Provision. At the parties' suggestion, the Court ordered supplemental briefing of Defendants' reinstated statute of repose argument.

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, and has considered carefully the submissions of the parties. For the reasons stated below, Defendants' Motion is granted.

## BACKGROUND

**\*2** The following facts are taken from the Amended Complaint. Plaintiff's factual allegations are accepted as true for the purpose of resolving this Motion.

Defendants were involved in various aspects of the securitization of an issuance of residential mortgage backed securities ("RMBS"). Between September 2007 and April 2008, CNB purchased ten RMBS certificates for approximately $67.5 million, and SCB purchased nine of the certificates for approximately $73 million (together, the "Securities"). Each of the Securities was offered to the public in 2006 and 2007. (*See* Am. Compl., Schedules 1–3, 5, 7, 10–12 Items 38(a) & 38(b).)

BSABS, MLMI, and CMSI issued certain of the Securities. Certain of the Defendants—Citigroup, Credit Suisse Securities, RBS, Bear Stearns, Merrill Lynch, DBS, UBS, and HSBC—acted as underwriters for the Securities. These underwriters purchased certificates from the trust and sold them to various investors, including the Banks. CitiMortgage, MLMCI, and Credit Suisse Mgmt. are sued as control persons.

The Banks were closed by the FDIC on May 22, 2009, and were placed into receivership. The FDIC thereafter conducted an extensive investigation of the Securities, including a detailed analysis of a random sample of the loans underlying each of the twelve Securities at issue here. This investigation included use of an automated valuation model which was based on "objective criteria like the condition of the property and the actual sale prices of comparable properties in the same locale shortly before the specified date."(Amend.Compl.¶ 50.) The FDIC alleges that this modeling revealed that loan-to-value ratios were misstated significantly in the offering documents for the Securities, and that "the number of properties on which the value was overstated exceeded by far the number on which the value was understated, and the aggregate amount overstated exceeded by far the aggregate amount understated."(Amend.Compl.¶ 51.)

The FDIC, as receiver for the Banks, filed this lawsuit on May 18, 2012, well over three years after each of the Securities was offered to the public.

## DISCUSSION

Claims brought under Section 11 of the 1933 Act are subject to the two-pronged timing provision of Section 13 of that Act, which is codified as 15 U.S.C. § 77m. The first prong of Section 13 is a statute of limitations, which provides that Section 11 claims must be brought within one year of "the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."15 U.S.C.S. § 77m (LexisNexis 2012). The statute of limitations may be tolled based on equitable considerations, but not beyond three years from the date of the relevant offering, at which point a plaintiff's claim is extinguished by Section 13's second prong—a statute of repose—which provides that "[i]n no event shall any such action be brought ... more than three years after the security was bona fide offered to the public."*Id.*

**\*3** The FDIC asserts that its claims are timely, notwithstanding the three-year Section 13 statute of repose, because the statute of repose is preempted by the FDIC Extender Provision, which reads in pertinent part as follows:

Statute of limitations for actions brought by conservator or receiver

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of-

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of-

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the [FDIC] as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C.S. § 1821(d)(14) (LexisNexis 2008).

The FDIC asserts that the Second Circuit's 2013 decision in *Federal Housing Finance Agency v. UBS Americas, Inc.,* 712 F.3d 136 (2d Cir.2013), holding that a substantially identical extender statute, governing actions brought by the Federal Housing Finance Agency (the "FHFA"), preempted the 1933 Act's statute of repose, is binding precedent that requires this Court to reject Defendants' untimeliness argument.

Defendants contend that the Supreme Court's decision in *CTS Corp. v. Waldburger,* 134 S.Ct. 2175 (2014), requires a different result. In *Waldburger,* the Court held that section 9658 of the CERCLA, which preempts state law statutes of limitations in certain tort actions, does not preempt state statutes of repose. The question thus before the Court is whether the Supreme Court's analysis in *Waldburger* calls the Second Circuit's *UBS* analysis into question sufficiently to relieve this Court of any obligation to follow *UBS* in determining the scope of the FDIC Extender Provision.

In *UBS,* the Second Circuit held that the extender statute applicable to actions brought by the FHFA, in its capacity as conservator of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation under HERA, operated to extend the FHFA's time to assert federal securities law claims, notwithstanding the repose provision of Section 13 of the 1933 Act. HERA's extender provision provides in pertinent part that:

(A) In General

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FHFA] as conservator or receiver shall be—

**\*4** (i) in the case of any contract claim, the longer of-

(I) the 6–year period beginning on the date on which the claim accrues; or

(II) the period applicable under State law; and (ii) in the case of any tort claim, the longer of-

(I) the 3–year period beginning on the date on which the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of-

(i) the date of the appointment of the [FHFA] as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C.S. § 4617(b)(12) (LexisNexis 2014). In reaching its decision, the Second Circuit found that, in using the phrase "*the* applicable statute of limitations with regard to *any* action brought by [FHFA] as conservator or receiver," Congress had expressed its intent to set a timing rule that a "reasonable reader could only understand ... to apply to both the federal and state claims in" the case—that is, to both statutes of limitation and the federal statute of repose. *UBS,* 712 F.3d at 141–42 (quoting 12 U.S.C. § 4617(b)(12)(A) (emphasis supplied by *UBS* Court)). "[A]ny ambiguity" in the text of the statute was, the court held, eliminated by the legislative history of the extender provision, which makes it clear that HERA was intended to empower the FHFA to collect all monies due to the conservatee agencies and provide the FHFA with time to mobilize and determine what claims to bring. According to the *UBS* Court, "it would have made no sense for Congress to have carved out securities claims from the ambit of the extender statute, as doing so would have undermined Congress' intent to restore [the conservatee agencies] to financial stability." *Id.* at 142.

Although the court recognized the distinct theoretical character of statutes of limitation as compared to statutes of repose, it observed that both courts and Congress have long used the term "statute of limitations" to refer to both, and concluded that "[i]n view of the text of the statute and its legislative history ..., it is clear that Congress intended one statute of limitations—[the HERA extender statute] ...—to apply to all claims brought by FHFA as conservator." *Id.* at

143. Congress would have used distinct, explicit terminology had it "really wanted to exclude securities claims from the ambit of HERA's extender statute," according to the *UBS* Court. *Id.* Based on this analysis, the *UBS* Court held that the HERA extender statute "supplants any other time limitations that might otherwise have applied" and saved the FHFA's Securities Act claims from the otherwise-applicable statute of repose.*Id.* at 143–44.

The Supreme Court's *Waldburger* decision calls into question several aspects of the *UBS* Court's analysis. Focusing on the text of the CERCLA extender statute, the *Waldburger* Court noted that the CERCLA statute used the term "statute of limitations" four times (in addition to use in the statute's caption), finding that usage "instructive" but not "dispositive." 134 S.Ct. at 2185. Acknowledging that the term "statute of limitations" is sometimes used in a "less formal" sense, referring "to any provision restricting the time in which a plaintiff must bring suit," the Court proceeded "to examine other evidence of the meaning of the term 'statute of limitations' " as used in the CERCLA extender statute. *Id.* Textual clues to meaning included the use of singular terms in referring to the period covered by the extension: " 'the applicable limitations period,' 'such period shall commence' and 'the statute of limitations established under State law.' " The Court observed that "[t]his would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *Id.* at 218687.

 *5  Focusing on the difference in operation between statutes of limitation, which limit the time period within which suits may be brought, and statutes of repose, which "mandat[e] that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued," the Court held that

> [i]n light of the distinct purpose for statutes of repose, the [CERCLA statute's] definition of 'applicable limitations period' [ ('the period specified in a statute of limitations during which a civil action ... may be brought') ] (and thus also the definition of 'commencement date' [ (defined as 'the date specified in a statute of limitations as the beginning of the applicable limitations period') ] ) is best read to encompass only statutes of limitations, which generally begin to run after a cause of action accrues and so always limit the time in which a civil action 'may be brought.' A statute of repose, however, may preclude an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm occurs.

*Id.* at 2187. The Court also found particularly significant a 1982 Congressionally-commissioned Study Group Report concerning the effect of state statutes of limitation and statutes of repose on CERCLA claims, which specifically recommended that both types of statutes be repealed. This report confirmed that Congress had been advised of the clear distinction between the two types of statutes, and made it "proper to conclude that Congress did not exercise the full scope of its pre-emption power" when it enacted the CERCLA extender statute, referring only to statutes of limitation, in response to the Report. *Id.* at 2186.

As to the significance of the purpose of the CERCLA extender statute—"namely to help plaintiffs bring tort actions for harm caused by toxic contaminants"—the Court cautioned that "the level of generality at which the statute's purpose is framed affects the judgment whether a specific reading will further or hinder that purpose."*Id.* at 2188. The Court noted that CERCLA does not provide a comprehensive remedial framework [3] but, rather, leaves "judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence and other important rules governing civil actions" to state law. *Id.* In the context of this framework, the Court held that, "[r]espondents ha[d] not shown that in light of Congress' decision to leave those many areas of state law untouched, statutes of repose pose an unacceptable obstacle to the attainment of CERCLA's purposes."*Id.*

Like the CERCLA extender statute, the FDIC's Extender Provision refers only to "statute of limitations" in the singular, several times, and includes no reference to any statute of repose. The Extender Provision is phrased by reference to the accrual of causes of action—the uniform extended limitations periods provided for FDIC-initiated actions "begin[ ] on the date the claim accrues," and "the date on which a claim accrues" is defined as "the date on which the statute of limitations begins to run on any claim described" in the relevant subparagraph, determined by reference to the date on which the FDIC was appointed as conservator or receiver or, if later, "the date on which the cause of action accrues."12 U.S.C.S. § 1821(d)(14) (LexisNexis 2008). As the Supreme Court recognized in *Waldburger,* statutes of repose operate without regard to the accrual of causes of action and, indeed, may expire and extinguish potential causes of action before they accrue at all. *See* 134 S.Ct. at 2187. Unlike statutes of limitation, statutes of repose are "measured not from the date on which the claim accrues but instead from the date

of the last culpable act or omission of the defendant." *Id.* at 2182. The FDIC Extender Provision's supplemental provision is triggered by, and measures accrual from, the appointment of the FDIC as conservator, not any action of the defendant. The text of the FDIC Extender Provision, read in light of the *Waldburger* Court's analysis, thus indicates strongly that Congress did not intend to encompass both types of timing provisions when it referred to statutes of limitation.

**\*6** A finding that the Extender Provision does not supplant both types of timing provisions is not inconsistent with its remedial purpose, which is "to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that otherwise would have been lost due to the expiration of hitherto applicable limitations periods."*See* 135 Cong. Rec. § 10205 (daily ed. Aug. 4, 1989). Like the CERCLA extender statute, the FDIC Extender Provision does not create new causes of action or procedural provisions to supplant existing statutory provisions. Extending statutes of limitation broadens the FDIC's potential scope of recoveries; the fact that certain securities law causes of action may be extinguished by the statute of repose does not indicate that the statute of repose is "an unacceptable obstacle to the attainment of [the FDIC Extender Provision's] purpose."*Cf. Waldburger,* at 2188. As another judge of this District has observed, "[b]y postponing otherwise applicable times of accrual of claims in state statutes of limitations, the FDIC Extender Provision did give the FDIC more time to bring claims that would otherwise have been lost, thus increasing the FDIC's ability to collect money through litigation."*F.D.I.C. v. Chase Mortgage Fin. Corp.,* No. 12CV6166, 2014 WL 4354671, at \*5 (S.D.N.Y. Sept. 2, 2014). A literal reading of the FDIC Extender Provision is thus effective to promote the purposes of the provision. Reading the statute of repose as preempted could, furthermore, produce extraordinarily open-ended liability for securities issuers. If, for instance, the relevant statute of limitations is discovery-based and the FDIC takes over as receiver prior to discovery of the wrong, the FDIC Extender Provision, which sets the outside date as the *later* of the three-year period beginning on the date the FDIC is appointed and three years after the cause of action accrues by reason of discovery, would subject the issuer to potentially unlimited exposure to suit. Nothing in the text of the FDIC Extender Provision suggests that Congress intended such a result.

In *UBS,* the Second Circuit also relied heavily on the remedial purposes discussed in the legislative history of the HERA statute and the mission of the FHFA, which is similar to that of the FDIC under FIRREA. *Waldburger* instructs that the remedial purpose of a statute is not a license to eschew the import of the text of an extender provision as enacted by Congress. *UBS,* in citing the mission of the FHFA as the proper basis of an assumption that Congress would not have intended to exclude securities law claims otherwise governed by a statute of repose, appears to have taken an analytical path inconsistent with the Supreme Court's new guidance.[4]

Furthermore, although there appears to be no legislative history indicating that Congress made a specific decision to exclude statutes of repose from the text or operation of the FDIC Extender Provision, it is clear that Congress was well aware of the two distinct concepts and had enacted both types of provisions in the time frame surrounding the enactment of the FDIC Extender Provision. *See In re Countrywide Financial Corp. Mortgage–Backed Securities Litig.,* 966 F.Supp.2d 1031, 1037–39 (C.D.Cal.2013) (discussing Congressional Record statements and statutory enactments).

**\*7** The Court recognizes that the Tenth Circuit, following the Supreme Court's remand in light of *Waldburger,* adhered to its earlier holding in *Nomura* that the National Credit Union Administration Board's extender statute, which is substantially identical to the FDIC Extender Provision, preempts both statutes of repose and statutes of limitation. *See* 764 F.3d at 1239. The Court respectfully disagrees with the *Nomura* decision on remand which, among other things, reads a provision measuring the extended statute of limitations from the date of appointment of the plaintiff conservator as "invok[ing] the concept of repose because it is based on when a specific event occurs, regardless of whether the plaintiff is aware of the injury."764 F.3d at 1211. That provision appears under the heading "Determination of the date on which a claim accrues."12 U.S.C.S. § 1787(b)(14)(B) (LexisNexis 2012). As explained above, concepts of claim accrual, and measurement from events distinct from the actions of the defendant, are entirely inconsistent with the conceptual and practical framework of statutes of repose. *Cf. Waldburger,* 134 S.Ct. at 2182.

The analytical framework set out by the Supreme Court in *Waldburger* calls into question the Second Circuit's analysis of the extender provision of HERA in its *UBS* decision, implicitly overruling material aspects of the *UBS* decision's rationale. "Lower courts are bound by Second Circuit precedent 'unless it is expressly or implicitly overruled' by the Supreme Court or an en banc panel of the Second Circuit.

Courts have interpreted this to mean that a decision of the Second Circuit is binding 'unless it has been called into question by an intervening Supreme Court decision or by one of the Second Circuit sitting in banc' or 'unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court, or the Second Circuit court in banc.' " *In re S. African Apartheid Litig.,* 15 F.Supp.3d 454, 459–60 (S.D.N.Y.2014) (quoting *World Wrestling Entm't Inc. v. Jakks Pac., Inc.,* 425 F.Supp.2d 484, 499 (S.D.N.Y.2006) and *United States v. Agrawal,* 726 F.3d 235, 269 (2d Cir.2013), *cert. denied,* 134 S.Ct. 1527 (2014)) (internal quotation marks omitted). Accordingly, the *UBS* decision does not bind this Court in its evaluation of the parties' contentions regarding the scope of the FDIC Extender Provision.

Having considered the text of the FDIC Extender Provision in light of its legislative context and the guidance provided by the Supreme Court's *Waldburger* decision, the Court concludes that the FDIC Extender Provision does not preempt the statute of repose set forth in Section 13 of the 1933 Act.

Accordingly, Defendants' motion to dismiss the Amended Complaint as untimely is granted and the Court need not address the parties' remaining arguments in connection with the motion practice.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted. Plaintiff's motion for a partial lift of the PSLRA discovery stay is denied as moot.

**\*8** The Clerk of the Court is directed to enter judgment in favor of Defendants and to close this case.

This Memorandum Opinion and Order resolves docket entry numbers 80 and 132.

SO ORDERED.

## Footnotes

1   Ally Securities, LLC, Bear Stearns Asset Backed Securities I LLC; the Bear Stearns Companies LLC; J.P. Morgan Securities LLC, Citicorp Mortgage Securities, Inc., CitiMortgage, Inc., Citigroup Global Markets Inc., and the Merrill Lynch Defendants have each been dismissed with prejudice by stipulated order pursuant to Federal Rule of Civil Procedure 41. (Docket entry numbers 101, 102, 115, and 126.)

2   *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc .,* 727 F.3d 1246, 1249 (10th Cir.2013), *cert. granted, judgment vacated,* 134 S.Ct. 2818 (2014), *remand decision,* 764 F.3d 1199 (10th Cir.2014), *cert. denied,* 135 S.Ct. 949 (2015).

3   The *Waldburger* Court expressly rejected application of "the proposition that remedial statutes should be interpreted in a liberal manner" to "substitute for a conclusion grounded in the statute's text and structure," noting that "[a]fter all, almost every statute might be described as remedial in the sense that all statutes are designed to remedy some problem." 134 S.Ct. at 2185. Instead, the congressional intent in enacting such statutes should be interpreted "primarily from the statutory text." *Id.*

4   *See supra* note 3.

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.